**In re BARNHART.**

No. 66856.

United States District Court
N. D. Ohio, E. D.

June 29, 1950.

Wilfred H. Collins, Akron, Ohio, trustee.

Wm. A Slater, Akron, Ohio, for bankrupt.

Evan J. Reed, Akron, Ohio, for objecting creditor.

WOODS, Referee in Bankruptcy.

Geraldine Jane Barnhart was adjudicated bankrupt on February 14, 1950 and Wilfred H. Collins is the trustee in bankruptcy.

Her discharge came on for hearing in the usual course, and the Commercial Credit Plan, Incorporated, filed specifications of objection to her discharge, which excluding the formal parts are as follows:

"1. The said Geraldine Jane Barnhart did obtain money and credit, and did obtain an extension of credit from the creditor by making and publishing a materially false statement in writing respecting her financial condition. Said statement was made in writing on February 25, 1949, to Commercial Credit Plan, Incorporated for the purpose of obtaining a loan from said corporation. Said corporation did on said date loan to said Geraldine Jane Barnhart and her husband, Ivan J. Barnhart, the sum of $553.25 of which the sum of $496.03 was used to pay off the principal of a prior note to said corporation executed by said Ivan J. Barnhart and Geraldine Jane Barnhart, and the sum of $57.22 was paid to said corporation as the balance of interest due on said prior note, and a new note was executed in said sum of $553.25 which materially extended the time of payment and provided for monthly payments over a period of 18 months thereafter. Said Geraldine Jane Barnhart failed to list all of her creditors in said financial statement, a substantial number and amount in claims was omitted from her said financial statement though said bankrupt knew of the existence of said claims, and said statement purported to be a full and complete list of her claims. Said financial statement was materially false in that she listed a total of her liabilities in the amount of $837.50 whereas

in trust and in fact the same were approximately $1800.00. Said creditor relied upon said financial statement in making said loan.

"2. The said Geraldine Jane Barnhart did on various and sundry occasions prior to February 25, 1949 obtain money and credit and an extension or renewal of credit by making materially false financial statements to said Commercial Credit Plan, Incorporated, which were relied upon by said corporation."

The relevant statute, Section 14, sub. c of the Bankruptcy Act, 11 U.S.C.A. § 32, sub. c, provides as follows: "c. The Court shall * * * discharge [the bankrupt] unless satisfied that the bankrupt has * * * (3) obtained money or property on credit, or obtained an extension or renewal of credit, by making or publishing or causing to be made or published in any manner whatsoever, a materially false statement in writing respecting his financial condition; * * *."

Counsel for bankrupt filed a demurrer to specifications of objection, and at the hearing parties were advised that a ruling on the demurrer would be reserved and all matters disposed of upon the hearing of the evidence.

The bankrupt is employed as bookkeeper and food controller at the Mayflower Hotel, is the mother of two children, and the continued illness of her husband contributed to the bankruptcy.

The trustee has already filed a no asset return and the estate has been administered, except as to the disposition of objections to her discharge.

The proof shows that bankrupt had six previous loans from the objecting creditor, beginning February 19, 1946 in the amount of $150, including a loan on August 13, 1947 for $600, and each of these was refinanced, and the last prior to the one here in controversy was given June 7, 1948, for $496.03, and this last was refinanced with the note and statement of February 25, 1949, Ex. 1.

The manager and witness for objector testified that he and the bankrupt had been classmates in school; that he had handled the last three previous loans of bankrupt, that this last loan was in default, and he asked that a new contract be made, so that the time for payment could be extended. After this solicitation, bankrupt and her husband signed the new note, received two checks, for principal $496.03 and for interest $57.22, as stated in the objections, which checks were immediately endorsed and turned over to objector upon the execution of the new note, and at the same time the statement of financial condition was signed.

The note for the previous loan was kept by the objector and is endorsed on the back —"Refinanced—hold". It was produced by the objector as Ex. 19, although it was admitted that the note had been paid in taking the new obligation.

The bankrupt says that while she knew of other debts, these were omitted from the statement, and that she talked with Roy P. Reffner, agent of objector, about them and he took the statement, as signed, as sufficient.

The schedule shows other debts and objector called witness from another loan company, showing an unpaid obligation, and an examination of this shows some 20 creditors, four for doctors and one a medical group.

The cases hold that to prevent a discharge, a statement must be false and fraudulent and must be a materially false statement, and that is intentionally untrue. It was said In re Venturella Co., D.C.Conn. 1938, 25 F.Supp. 332, 39 A.B.R.,N.S., 527, affirmed 2 Cir., 102 F.2d 1022, that a materially false financial statement, on the ground of which a bankrupt's discharge may be denied must be one the falsity of which is known to the bankrupt and must be made in an attempt to deceive.

An early case is In re Matthews, 7 Cir., 1921, 272 F. 263, 264, 47 A.B.R. 38, 39, where Judge Evans said: "From our examination of the evidence, we are unable to say this finding was erroneous. That a false property statement was made is conceded. But bankrupt says that he neither read the statement nor knew its contents. As an excuse for this negligent action, he says he was dealing with one who knew the state

of his affairs fully as well as, or even better than, he knew them."

The grounds for refusing a discharge. to a bankrupt are statutory, and as to materially false statements, there are many cases: Judge Davis said in Taback v. Morimura, Arai & Co., 3 Cir., 1927, 21 F.2d 161, 162, 10 A.B.R.,N.S., 538 that: "Intent of the bankrupt is the touchstone by which his right to a discharge must be tested." This case was confirmed on review in Morimura, Arai & Co. v. Taback, 1929, 279 U.S. 24, 49 S.Ct. 212, 73 L.Ed. 586, 13 A.B.R.,N.S., 277.

In this Circuit in Third National Bank v. Schatten, 6 Cir., 1936, 81 F.2d 538, 31 A. B.R., N.S., 10, Judge Hicks adopted such rule and the syllabus is, "A false statement in writing which is enough to warrant denial of a discharge must be knowingly false, or made recklessly, without an honest belief in its truth, and with a purpose to mislead or deceive". In his opinion, Judge Hicks said, 81 F.2d 540, 31 A.B.R., N.S., at page 15: "The right to the discharge was addressed to the discretion of the court, In re Merritt, 9 Cir., 28 F.2d 679, [13 Am.B. R., N.S., 47];Baash-Ross Tool Co. v. Stephens, supra [9 Cir., 73 F.2d 902], not to an arbitrary discretion, of course, but to its sound judicial discretion. We do not find that there was a gross abuse of the court's function. The bankrupt had one purpose, common both to his business and his family; i. e., to make ends meet".

To the same effect is the rule in the Fifth Circuit in Hartsfield Co. v. Smith, 61 F.2d 723, 22 A.B.R., N.S., 51, where the court held that the statement must be intentionally untrue and not merely erroneously or mistaken to bar discharge under Sec. 14, sub. c (3) of the Bankruptcy Act.

Counsel for objector relies on In re Levine, D.C.S.D.N.Y. 1939, 28 F.Supp. 819, 41 A.B.R., N.S, 709, where it was held that false financial statements given on application for renewal of a loan, where the creditor relied upon the statement, that the discharge should be denied. However, in this Circuit bankrupt's discharge was not denied on the ground that he obtained credit on false financial statement in writing, where it appeared from the undisputed evidence that the alleged false statement signed by bankrupt was prepared by an agent of the objecting creditor, and there was no proof that the creditor relied upon the false statement in extending credit. Opinion by Simons, Judge, in Crue v. Timmer, 6 Cir., 1941, 119 F.2d 415, 46 A.B.R., N.S., 174.

From the facts which appeared in this case, that the objector had had a long course of dealing with the bankrupt, that the objector solicited the renewal of the note, and that he, an old friend and classmate of the bankrupt, made the request for a new obligation, it would appear that the bankrupt, knowing of her former dealings with the loan company, would not be reluctant to execute a new obligation, as requested.

On the refinancing, no proof was offered as to the computation by which the amount of $57.22 was added to $496.03 (the principal of the prior note) to make the total $533.25 in the new note. While this new contract may not be prohibited or condemned by the terms of the Ohio Small Loan Act, G.C. § 8624-50 et seq., attention is called to the provisions in that Act, Section 8624-62(b), that in refinancing—"It shall be permissible * * * to incorporate in the principal amount of a new loan contract unpaid charges * * * which have accrued within sixty days before the making of such new loan contract". Apparently the purpose of the Small Loan Act is to protect small borrowers from harsh and oppressive charges in refinancing operations.

On the basis of the evidence offered here, it cannot be considered that the financial statement was seriously any part of the transaction, or that any reliance was placed on it by the objector in executing the new loan. In fact, the objector benefitted by the new obligation in that the past due interest became a part of the principal, and the old note was never returned to the bankrupt.

Proof fails to show any reliance of the objecting credit union, or its manager, on

the false financial statements, it had received in the seven renewals of its loan to this bankrupt. If such reliance is claimed, it should be pointed out that the false financial statement was procured by trick to secure a new loan, which cannot be countenanced in considering the rights of debtors in administering the Bankruptcy Law. Instances where such practice by the objecting loan company have not been held to prevent a discharge are to be found in the cases of In re Venturella, D.C.Conn.1938, 25 F.Supp. 332, 39 A.B.R., N.S., 527, affirmed 2 Cir., 1939, 102 F.2d 1022, and In re Kenney, 1940, 43 A.B.R., N.S., 242, a case from this Referee, which was affirmed by the District Judge on review.

Procurement of a false financial statement from debtor by trick by a loan company, to be used later that it may object to the discharge of a bankrupt under Sec. 14 sub. c (3) of the Bankruptcy Act, so as to help in collecting its account, is a practice not to be favored. Congress never intended that the Bankruptcy Court should be used as an adjunct to a collection agency.

Having disposed of the objections to discharge on the merits, the demurrer will be sustained, the objections overruled, and discharge granted.